IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00489-CMA-KLM

JOSE MEDINA ESCOBAR,

      Plaintiff,

v.

ASSOCIATE WARDEN S. FOSTER,
DEPUTY DIRECTOR L. REID,
MAJOR L. MAIFELD,
LIEUTENANT L. TRAVIS,
LIEUTENANT TEDEMANN,
LIEUTENANT BURKE,
CAPTAIN PADILLA,
CAPTAIN D. WILLIAMS,
SERGEANT MARQUEZ,
SERGEANT MONTGOMERY,
SERGEANT HAWKINS,
SERGEANT FRETWELL,
C/O CALDARONELLO,
C/O P. ARCHULETA,
C/O ALANIS,
C/O AURITI,
C/O SAUCIDO,
C/O KITCHEN,
C/O S. HARTUNG,
C/O MONTANEZ, and
C/O B. TETRICK,

      Defendants.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

      This matter is before the Court on **Defendants' Motion to Dismiss Pursuant to 28**

**U.S.C. § 1915(e)(2)(B)(I)** [Docket No. 110; Filed May 13, 2013] (the "Motion"). On May 23,

2013, Plaintiff filed a Motion in Opposition to Defendants [sic] Motion to Dismiss [#114]

("Response").  On June 6, 2013, Defendants filed a Reply [#118].  Pursuant to 28 U.S.C.

§ 636(b)(1) and D.C.COLO.L.Civ.R. 72.1.C., the Motions have been referred to this Court

for recommendation [#112].  The Court has reviewed the Motions, Plaintiff's Response, the

Reply, the entire docket, and the applicable law, and is sufficiently advised in the premises.

The Court also takes judicial notice of all pleadings previously filed in cases brought by

Plaintiff which are relevant to the adjudication of the present Motion.  Fed. R. Evid. 201.[1]

The Motion is now fully briefed.

        For the reasons set forth below, the Court recommends that the Motion to Dismiss

[#110] be **DENIED**.

## I.  BACKGROUND

        In order to provide context to the Court's Recommendation, the following explains

the factual and procedural background regarding both Plaintiff's present case and, where

relevant, Plaintiff's previous lawsuits.

### A.     Review of Present Case

        Plaintiff, who is proceeding *pro se*, is a prisoner currently incarcerated by the

Colorado Department of Corrections ("CDOC").  *Motion* [#110] at 2.  Plaintiff filed the

present action on February 24, 2012, and was given leave to proceed *in forma pauperis*

---

[1] *See United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) (noting that the Court may "take judicial notice of publicly-filed records in our court and certain other courts concerning matters that bear directly upon the disposition of the case at hand"); *Powell v. Rios*, 241 F. App'x 500, 501 n.1 (10th Cir. 2007) (noting that the Court may take judicial notice of information derived in a party's tandem case because it is a matter of public record); *St. Louis Baptist Temple v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (holding that "federal courts, in appropriate circumstances, may take notice of proceedings . . . if those proceedings have a direct relation to matters at issue," and noting that "[j]udicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it"); *Gulf Coast W. Oil Co. v. Trapp*, 165 F.2d 343, 349 (10th Cir. 1948) (permitting the court on a motion to dismiss to use uncontroverted facts ascertainable in another matter which are relevant to an issue in the pending case to "reach a just result and bring an end to litigation").

("IFP") [#1, 2]. Plaintiff's Complaint alleges that numerous individuals in the Colorado prison system violated his constitutional rights in various ways. His filing describes incidents of alleged physical and mental abuse, harassment, excessive force, threats, slander, discrimination, denial of adequate medical attention, retaliation for exercise of his legal rights, destruction of his belongings, contamination and denial of his food, interference with his legal materials, and confinement with inmate enemies. Defendants allege that, "despite having brought nine separate cases alleging essentially the same type of misconduct against a slew of CDOC employees, Plaintiff has repeatedly failed to come forth with any evidence supporting his claims of physical, sexual, and psychological abuse." *Motion* [#110] at 4. Defendants ask "that the Court exercise its 'unusual power [pursuant to 28 U.S.C.A. 1915(e)(2)(B)(I)] to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless,' as set forth in *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)." *Id.*

### 1.    Allegations and Pleadings

Due to the extensive nature of the multiple allegations against the named Defendants, the Court lists the claims and accompanying sub-parts below and identifies to which Defendant each subpart applies. Plaintiff requests compensatory and punitive damages, declaratory judgment, and certain forms of injunctive relief, including a transfer out of administrative segregation. *See Compl.* [#1] at 29-30.

Plaintiff lists four claims against some or all of the Defendants: Correctional Officer Archuleta ("Archuleta"), Correctional Officer Alanis ("Alanis"), Correctional Officer Auriti ("Auriti"), Lieutenant Burke ("Burke"), Correctional Officer Caldaronello ("Caldaronello"), Associate Warden S. Foster ("Foster"), Sergeant Fretwell ("Fretwell"), Sergeant Hawkins

("Hawkins"), Correctional Officer S. Hartung ("Hartung"), Correctional Officer Kitchen ("Kitchen"), Major Maifeld ("Maifeld"), Sergeant Marquez ("Marquez"), Sergeant Montgomery ("Montgomery"), Correctional Officer Montanez ("Montanez"), Captain Padilla ("Padilla"), Deputy Director L. Reid ("Reid"), Correctional Officer Saucido ("Saucido"), Lieutenant Tedemann ("Tedemann"), Correctional Officer B. Tetrick ("Tetrick"), Lieutenant L. Travis ("Travis"), and Captain D. Williams ("Williams").  At all times relevant to Plaintiff's claims, Defendants were employees of CDOC.  *See Compl.* [#1] at 2-6.  Plaintiff's four claims are as follows:[2]

**Claim One** (*Compl.* [#1] at 14-16): First Amendment violation of Plaintiff's right to access the courts.  Claim One identifies:

a.  Defendants Marquez, Montgomery, Alanis, Auriti, Saucido, Tetrick, and Hartung, for long-term retaliation stemming from Plaintiff's grievances and lawsuits against them, by "using/abusing the high security monitoring system . . . making lewd comments on his genetals[sic] to humiliate [him] referring to him as a pedophile and a snitch . . . to cause him harm for his protected rights," and depriving him of sleep, *id.* ¶¶ 11,  40, 41;

b.  Defendant Caldaronello, for unnecessarily and wantonly inflicting pain on him in retaliation for Plaintiff's grievances and lawsuits against her, *id.* ¶¶ 6, 7, 37;

c.  Defendants Fretwell, Tedemann, Travis, Marquez, Montgomery, Alanis, Kitchen, and Hartung, for denying him access to the courts, confiscating his personal property and legal materials, hindering his legal research and destroying his legal mail, *id.* ¶¶ 8, 16, 17, 30, 46;

---

[2]  Although the Court has reviewed and considered all of Plaintiff's claims, the Court notes that Plaintiff repeats some of his allegations under multiple claims of violation when they are more appropriately and clearly related to a single constitutional violation.  The Court appropriately disregards the legal labels applied by a *pro se* plaintiff when those labels serve to obfuscate the nature of the legal claims asserted.  *See Castro v. United States*, 450 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a *pro se* party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis").  Therefore, where these allegations are duplicative or are more appropriately pled under another violation, they have been omitted or reorganized, not because the Court fails to note them, but for the sake of clarity and brevity.

     d.      Defendants Tetrick, Hartung, Auriti, and Saucido, for filing false COPD reports in retaliation for Plaintiff's grievances, *id.* ¶¶ 24, 44, 48;

     e.      Defendants Travis, Marquez, Montgomery, Alanis, Kitchen, Travis, Montanez, Versteegh, and Hartung, for "severely destructive, repeated cell shake downs" that resulted in the destruction of legal research and materials, hindering Plaintiff's access to the courts, *id.* ¶¶ 16, 27, 43;

     f.      Defendants Marques, Montgomery, Alanis, Auriti, and Saucido for depriving Plaintiff of food, either by threat, force, or contamination, in retaliation for Plaintiff's legally protected conduct, *id.* ¶¶ 9, 13, 29, 45;

     g.      Defendants Maifeld, Travis, and Williams, for depriving Plaintiff of humane confinement conditions in retaliation for Plaintiff's grievances and lawsuits, *id.* ¶¶ 21, 31, 47; and

     h.      Defendant Travis, for allegedly deceiving Plaintiff with a promise that Plaintiff would no longer be deprived of meals if he dismissed his lawsuit, allegedly limiting Plaintiff's access to the Court, *id.* ¶ 29, 50. *See Order Dismissing Case Without Prejudice* [#16] in *Escobar v. Hachey, et al*, No. 11-cv-01443-CMA-KLM (D. Colo. July 18, 2011).[3]

**Claim Two** (*Compl.* [#1] at 17-19): Fifth Amendment violations, including substantive and procedural due process and equal protection.  Claim Two identifies:

     a.      Defendants Travis, Tedemann, Fretwell, Marquez, Montgomery, Alanis, Tetrick, Hartung, Kitchen, Montanez, and Versteegh, for repeatedly conducting destructive cell shakedowns that occurred without due process and  that damaged and destroyed Plaintiff's personal and legal property, *id.* ¶¶ 16, 27, 54;

     b.      Defendant Caldaronello for, while allegedly driven by racial discrimination, violating Plaintiff's "right and privilege not to be subjected to punishment without due process of law," *id.* ¶¶ 6, 7, 53;

     c.      Defendants Marquez, Montgomery, Alanis, Auriti, Saucido, and Archuleta, for consciously disregarding the risks of infliction of unnecessary and wanton pain on Plaintiff without due process, *id.* ¶¶ 12, 14, 20, 25, 26 56;

     d.      Defendants Foster and Reid, for their deliberate intent to deprive Plaintiff of equal protection when they knew he was being denied "the minimal civilized

---

[3]  Based on the dates referenced in this Order and the Complaint, the Court deduces that this was the lawsuit Plaintiff alleged he was deceived into dismissing.

measures of life's necessities," when each had actual notice of the "inhumane conditions of confinement" and failed to intervene, *id.* ¶¶ 15, 28, 30, 57;

e.  Defendants Maifeld, Williams, and Travis, for their continued denial of "the minimal civilized measures of life's necessities" without due process and with the intent to cause Plaintiff serious harm, *id.* ¶¶ 10, 11, 21, 23, 30, 58;

f.  Defendants Padilla and Burke, for their failure to intervene "when they witnessed Plaintiff in excruciating pain," denying him due process and equal protection, *id.* ¶¶ 20, 26, 59;

g.  Defendants Auriti, Saucido, Tetrick, and Hartung, for filing false COPD reports against Plaintiff, depriving him of liberties and privileges without due process, *id.* ¶¶ 24, 44, 60; and

h.  Defendants Maifeld, Williams, and Travis, for denying Plaintiff "over one hundred issues of his yearly subscription of Denver Post News Paper, and allowing him only two issues of a magazine subscription,"[4] depriving him of his rightful property without due process of law. *Id.* ¶¶ 34, 64.

**Claim Three** (*Id.* at 20-24): Eighth Amendment violations, including use of excessive

force, cruel and unusual punishment, deliberate indifference to serious medical needs, and

retaliation. Claim Three identifies:

a.  Defendants Burke and Padilla, for failing to use their supervisory authority to protect Plaintiff from harm when they were obligated to do so, *id.* ¶¶ 20, 26, 69;

b.  Defendants Caldaronello, Marquez, Montgomery, Alanis, Auriti, Saucido, Archuleta, and Hawkins, for inflicting cruel and unusual punishment in the form of undue and wanton pain on Plaintiff's hands and testicles, *id.* ¶¶ 6, 7, 12, 14, 20, 25, 26, 66, 68;

c.  Defendants Travis, Tedemann, Maifeld, Williams, Marquez, Montgomery, Alanis, Auriti, Tetrick, Saucido, and Hartung for depriving Plaintiff of sleep, food, and "a minimal civilized measure of life's necessities" by repeatedly subjecting him to the cruel and unusual punishment of Behavior Modification Procedures ("BMP"), *id.* ¶¶ 11, 13, 21, 22, 29, 31, 72, 73;

---

[4] Plaintiff cites this same deprivation as grounds for an Eighth Amendment violation, alleging the choice was part of a "year-long quest to deprive Plaintiff of . . . any/all links with the outside world-sensory deprivation." *Id.* ¶ 75.

    d.    Defendants Reid, Foster, Travis, Maifeld and Williams for conspiring with and influencing other Defendants to punish Plaintiff by unconstitutionally depriving him of "a minimal civilized measure of life's necessities" and for failing to take any reasonable steps to protect Plaintiff when they knew he was at risk for serious harm, *id.* ¶¶ 11, 15, 23, 30, 76, 77; and

    e.    Defendants Fretwell and Tedemann, for depriving Plaintiff of medical attention, *id.* ¶¶ 8, 67.

In addition to these allegations, Plaintiff makes general allegations that the particular restrictions imposed on Plaintiff during his incarceration, including his segregation from the general population and his extended time in solitary confinement, are in violation of the Eighth Amendment. *See id.* at 23-24.

    **Claim Four** (*Id.* at 24-25): Intentional Infliction of Mental and Emotional Distress. Though reiterating many of the factual allegations made throughout the Complaint, Plaintiff does not single out any specific actions by specific Defendants to support his fourth claim. He also alleges, with regard to the chilling effects of these claims, that the conditions Defendants imposed on him have, on one hand, "dissuaded him from pursuing [unspecified] PLRA obligations," but that, on the other hand, "Plaintiff is fully aware that Magistrate Judge is so overwhelmingly hostile towards Plaintiff that she would not hesitate to dismiss his action if he were to succumb to the Defendants [sic] force, violence and intimidation in dissuading him." *Id.* ¶ 87.

    Since the filing of Plaintiff's Complaint [#1], Plaintiff has filed seven motions attempting to amend his Complaint [##12, 18, 78, 82, 92, 94, 96]. All have been denied as incomplete or untimely [##15, 21, 103]. Plaintiff has also filed a groundless Motion for Recusal [#106], four motions for various forms of additional relief [##46, 97, 100, 108], a Motion for Final Judgment [#37], and a motion to impose sanctions on Defendants [#87].

Aside from three requests for relief that remain pending [##97, 100, 108], all have been denied [##49, 102, 104, 113]. He also filed an appeal from the denials of his motions to supplement and to amend. *See Escobar v. Foster*, No. 12-1160 (10th Cir. May 16, 2012) (unpublished order) (dismissing appeal for failure to prosecute).

### 2.    Plaintiff's Abusive Pleadings and Admonishments

The Court takes particular notice of the warnings and admonishments Plaintiff has already received for his pleadings in this case. Plaintiff filed a pleading titled "Motion for Recusal of Both Trial Judge C.M. Arguello and Magistrate Judge K.L. Mix" [#106] on May 2, 2013. The motion requested that the District Judge and the undersigned recuse from this case on the basis of "numerous disrespectful, baseless, and outlandish allegations." *Minute Order* [#113] at 2. These allegations included the unfounded accusations that "both court officials entered into an understanding and agreement and conspired to willfully, maliciously and arbitrarily deprive Plaintiff through an act of discrimination in retaliation for his previous allegations against U.S. Magistrate Judge Mix, his equal protections of the law, and that their nonfeasance or misfeasance has interfered with the due course of justice." *Motion to Recuse* [#106] ¶ 7. Plaintiff also alleged without evidence that "both court officials have dragged their feet when it comes to ruling on Plaintiff's motions for injunctive/preventative relief, and/or shaped and/or arranged their case law [and] legal authority to deny Plaintiff all his motions for injunctive relief . . . ." *Id.* ¶ 5 (emphasis omitted).

On May 15, 2013, the Court denied Plaintiff's motion for recusal [#113] on the grounds that "conclusions, rumors, beliefs, and opinions are not sufficient to form a basis for disqualification," and that Plaintiff had not met the substantial burden required "to

demonstrate that the judge is not impartial." *Minute Order* [#113] at 3 (citation omitted).

The Court thus found that recusal was not required pursuant to either 28 U.S.C. §144 or

§ 455.  *Id.*   The Court also noted that Plaintiff has previously filed many lawsuits in this

district.  *See Escobar, et al v. Johnson, et al*, No. 90-cv-00018-RPM (D. Colo. Jan. 4 1990)

("*Escobar I*");   *Escobar v. Parker*, No. 91-cv-01580-RPM (D. Colo. Sept. 12, 1991)

("*Escobar II*");   *Escobar v. Zavares, et al*, No. 93-CV-1950-LTB (D. Colo. Sept. 17, 1993)

("*Escobar III*");   *Escobar v. Zavares, et al*, No. 96-cv-00107-RPM (D. Colo. Jan. 18, 1996)

("*Escobar IV*");   *Escobar v. Suthers, et al*, No. 99-cv-01573-RPM (D. Colo. Aug. 13, 1999)

("*Escobar V*");   *Escobar v. Atherton, et al*, No. 02-cv-01796-REB-BNB (D. Colo. Sept. 19,

2002) ("*Escobar VI*");   *Escobar v. Olivett, et al*, No. 06-cv-01222-CMA-KLM (D. Colo. June

27, 2006) ("*Escobar VII*");   *Escobar v. No Defendants Named*, No. 08-cv-01992-ZLW (D.

Colo. Sept. 16, 2008) ("*Escobar VIII*");   *Escobar v. Jones, et al*, No. 09-cv-02207-CMA-KLM

(D. Colo. Sept. 15, 2009) ("*Escobar IX*");   *Escobar v. Holditch, et al*, No.

10-cv-2050-CMA-KLM (D. Colo. Aug. 25, 2010) ("*Escobar X*");   *Escobar v. Huertas, et al*,

No. 11-cv-00169-CMA-KLM (D. Colo. Jan. 24, 2011) ("*Escobar XI*");   *Escobar v. Hachey,

et al*, No. 11-cv-01443-CMA-KLM (D. Colo. June 2, 2011) ("*Escobar XII*");   *Escobar v.

Foster, et al*, No. 12-cv-00489-CMA-KLM (D. Colo. Feb. 24, 2012) ("*Escobar XIII*");   *Escobar

v. Maifeld, et al*, No. 12-cv-01662-CMA-CBS (D. Colo. June 25, 2012) ("*Escobar XIV*");

*Escobar v. Trani, et al*, No. 12-cv-03052-CMA-KLM (D. Colo. Nov. 19, 2012) ("*Escobar

XV*").   In many of these lawsuits, Plaintiff filed several motions to recuse and objections to

recommendations "based on unfounded and incendiary accusations of personal biases."

*Minute Order* [#113] at 2; *Motion for Recusal of Trial Judge E. W. Nottingham* [#105] in

*Escobar VII* (D. Colo. Dec. 14, 2007) (trial court and magistrate judges "have been

extremely biased, discriminative/racially"); *Objection to Magistrate Judge Mix Recommendation* [#143] ¶ 6 in *Escobar VII* (D. Colo. Mar. 17, 2008) ("Magistrate Judge Mix and Judge Nottingham are aiding and abetting the defendants in their attempt to cause plaintiff's demise."); *Motion to Recuse Magistrate and Trial Judge* [#310] in *Escobar VII* (D. Colo. Apr. 11, 2011) (accusing magistrate judge of "bias and prejudice, hostilities, gender and racial discrimination")); *Objection to Report and Recommendations* [#95] in *Escobar IX* (D. Colo. Feb. 7, 2011) ("Plaintiff reminds the Court that there is a severe conflict of interest between Plaintiff and the Magistrate Judge [because] Plaintiff has . . . formally charged Magistrate Judge Mix of 'sexual-gender-bias-prejudice and racial discrimination, harassment, the malfeasance and nonfeasance- the misconduct of a court official.") (referencing a dismissed *Notice of Intent* [#2] in *Escobar VIII*).  A review of these cases shows that Plaintiff has repeatedly lodged disrespectful and  baseless allegations of bias and prejudice against multiple judicial officials, even after the Court has repeatedly reproached Plaintiff for this behavior.  *See Plaintiff's Objection to Magistrate Judge Decision* [#294] in *Escobar VII* (D. Colo. Fed. 8, 2011); *Objection to Report and Recommendations Filed By Plaintiff* [#296] ¶¶ 8-11 in *Escobar VII* (D. Colo. Feb. 11, 2011); *Objection/Appeal of Magistrate Judge Decision to District Court* [#131] ¶¶ 2-3 in *Escobar IX* (D. Colo. July 22, 2011); *Objection to Report and Recommendations filed by Plaintiff* [#45] ¶ 15 in *Escobar X* (D. Colo. Feb. 15, 2011) ("U.S. Magistrate Judge Mix has shaped and structured Plaintiff's claims for relief in such a way as to enable her personal acquaintances to avoid any liability."); *Notice of Voluntary Dismissal* [#70] ¶ 3 in *Escobar XI* (D. Colo. Feb. 14, 2012) (accusing magistrate judge of "racial bias" and "invidiously discriminatory animus" without evidence or grounds); *Order Denying Motion to Recuse*

*Magistrate and Trial Judge* [#312] at 4 ("The Court admonishes Plaintiff for his incessant practice of [baselessly] insulting the judiciary and making a mockery of these judicial proceedings. This behavior will no longer be tolerated."); *see also Escobar v. Holditch*, 2011 WL 3924970, *1 (D. Colo. Sept. 6, 2011) (reminding Plaintiff of admonishment); *Compl.* [#1] in *Escobar XIV* (D. Colo. June 25, 2012) ¶¶ 4-6, 22 (again referencing the bias of various judicial officials, including an allegation that prison staff "had information of all Plaintiff's civil litigations [and] the numerous denials/dismissals of numerous meritorious claims by Magistrate Judge Mix (who[m] CSP/CCP staff has [sic] always claimed as their ally)"); and *Letter* [#34] in *Escobar XIV* (D. Colo. Oct. 17, 2012) ("[T]his district court has for numerous years [ ] forced the Plaintiff to consummate a continual series of [injuries] due to malfeasance, nonfeasance, and severe bias due to his unwarranted accusations against the U.S. magistrate judge in 2008.").

The Court has already reproached Plaintiff again in this case for "his incessant practice of insulting the judiciary and making a mockery of these judicial proceedings," warning him that "any future filings that contain disrespectful, baseless, and outlandish allegations against the judiciary *will result in such pleadings being stricken from the record.*" *Minute Order* [#113] at 6 (emphasis added). Plaintiff has also been informed that the Court "may dismiss this action and may apply all or part of the filing fee payments tendered in this action to satisfy any filing fee debt the plaintiff may owe in a prior action or actions if [P]laintiff fails to stay current with his payment obligations in the prior action or actions." *Order granting Motion for Leave to Proceed in Forma Pauperis* [#4] at 3. Additionally, Plaintiff received warnings of conditions that may lead to dismissal in the *Incarcerated Pro Se Litigant Letter* [#64-1]:

2. If you refuse to participate in a scheduled hearing, the Judge can impose monetary or non-monetary sanctions on you, including *dismissal of your case.*
. . .
7. If you use abusive, offensive, obscene or inappropriate language in any document you file with the Court, the Judge may *strike your document and refuse to consider it.*
. . .
11. There are two sets of formal rules that apply to cases in this Court: (1) the Federal Rules of Civil Procedure and (2) the Local Rules for the United States District Court for the District of Colorado. Copies of both are available through the Clerk's Office at the Alfred A. Arraj United States Courthouse, 901 19th St., Denver, CO 80294.
. . .
12. Even though you don't have a lawyer representing you in your case, you are required to follow the Rules identified in paragraph 11 above. *Failure to follow the rules and/or failure to follow Court orders may result in the Judge ordering you to pay money to the other parties or dismissing your case.*

(emphasis added).

## B.    Plaintiff's History of Litigation on Similar Facts

Defendants, in table format, cite to nine of Plaintiff's previous lawsuits in this Court, arguing that Plaintiff has repeatedly asserted similar claims against an ever-widening pool of defendants. *Motion* [#110] at 4. Defendants argue that Plaintiff has repeatedly failed to come forth with any evidence supporting these repeated claims of physical, sexual, and psychological abuse. *Id.* Defendants summarize these cases as follows:

On June 27, 2006, *see Compl.* [#3] in *Escobar VII*, "Plaintiff brought claims against 34 individuals asserting that defendants violated his constitutional rights by assaulting and inflicting pain and torture upon him, using excessive force against him, denying requested medical treatment, contaminat[ing] his meals, and filing false disciplinary charges against him in retaliation for his legal actions." *Motion* [#110] at 7 (citing *Def. Ex. A-2* [#110-2]). Even after repeatedly supplementing his Complaint with additional pleadings and claims for relief, these charges resulted in either dismissal or summary judgment in favor of all

defendants. *See Report and Recommendations* [#209] in *Escobar VII*; *Order* [#274] in *Escobar VII*.

On September 15, 2009, *see Compl.* [#3] in *Escobar IX*, Plaintiff brought claims against 27 individuals "asserting that defendants violated his constitutional rights by denying him food, sleep, medication, intentionally inflicting pain and torture upon him by hurting his hands and testicles, intentionally inflicting mental pain upon him, using excessive force against him, filing false prison disciplinary charges against him, depriving him of medical care, and retaliating against him for filing grievances and lawsuits." *Motion* [#110] at 7 (citing *Def. Ex. A-3* [#110-3]). This complaint in particular is exceedingly similar to Plaintiff's current allegations, including citations of similar quotations from different defendants speaking years apart. *Compare Compl.* [#1] ¶ 19 (Plaintiff alleges that on June 13, 2011, Defendant Auriti informed Plaintiff "You can't beat us, we'll break you from filing on us.") *and Compl.* [#1] ¶ 33 (accusing Defendants Marquez, Montgomery, Alanis, Auriti, Saucido, Tetrick, and Hartung of "labelling [sic] and calling Plaintiff a pedophile and a snitch), *with Compl.* [#3] in *Escobar IX,* ¶ 15(Plaintiff alleged that Defendant Martinez informed Plaintiff "Your[sic] not eating when I'm feeding this tier, and don't get used to your tv. I'll break you from filing on us.") *and Compl.* [#3] in *Escobar IX,* ¶ 17 (alleging that Defendant Keleman told "Plaintiff's neighbors that he's an informant/snitch and a pedophile"). This case resulted in a partial summary judgment and a jury verdict in favor of the remaining Defendants. *See* [#150, 205, 206] in *Escobar XI*.

In *Escobar X*, "Plaintiff brought claims against 15 individuals asserting claims that defendants inflicted pain and suffering on Plaintiff in part by beating him and inflicting pain on his hands and testicles, depriv[ing] him of food and sleep, destroying his property, filing

false prison disciplinary charges against him, and retaliating against him for filing grievances and lawsuits." *Motion* [#110] at 7 (citing *Def. Ex. A-4* [#110-4]).  Notably, this case also brought claims against Defendant Archuleta, a defendant in the present action. *See Compl.* [#1] at 1; *Compl.* [#17] in *Escobar X*, ¶¶ 12, 25.

*Escobar XI* and *Escobar XII* were each voluntarily dismissed, but alleged similar claims to those presented here.  In the *Escobar XI* Complaint, Plaintiff alleged retaliation, impermissibly limited access to outdoor exercise, excessive force, and deliberate indifference to his medical needs.  *See Compl.* [#1] in *Escobar XI*. Likewise, on similar facts regarding overlapping sets of defendants, the *Escobar XII* Complaint alleged Eighth Amendment violations, intentional infliction of emotional distress, and Fourteenth Amendment violation of due process.  *See Prisoner Compl.* [#1] in *Escobar XII*.

In addition to the present action, Plaintiff has two pending actions. *See Escobar XIV and Escobar XV*.  *Escobar XIV* includes 24 defendants, two of whom appear to be Defendants in the present case.  *Compare Compl.* [#1] at 1 (naming Defendants Maifeld and Travis) with *Compl.* [#1] in *Escobar XIV* at 1.  *Escobar XV* includes 31 defendants and also appears to include two Defendants in the present case.  *Compare Compl.* [#1] at 1 (naming Defendants Travis and Auriti) with *Compl.* [#1] in *Escobar XV* at 1.  In each case, Plaintiff alleges that "defendants inflicted pain and suffering on Plaintiff . . . deprived him of food and sleep, filed false prison disciplinary charges against him, confiscated his personal and legal property, deprived him of his medication, contaminat[ed] his food, retaliated against him for filing grievances and lawsuits, deprived him of the ability to use the grievance system, and constantly used an audio and video recording device to record their interactions with him." *Motion* [#110] at 8 (citing *Def. Ex. A-8* [#110-8] and *Def Ex. A-9*

[#110-9]).

The Court has reviewed these pleadings and has found these summaries of the allegations to be accurate in all relevant facts. However, while appreciating the efforts that went into Defendants' account of Plaintiff's previous litigation, the Court notes that Defendants' account is not complete.

Plaintiff's first lawsuit with this Court was filed on January 4, 1990. *See generally Docket of Escobar I.* Though agreeing to a voluntary dismissal with prejudice on January 7, 1992, *Stipulation* [#27] in *Escobar I*, Plaintiff subsequently filed a statement requesting transfer, a letter to the court, a motion for an Order to Show Cause, and an additional affidavit of supporting facts [##29, 30, 31, 33] in *Escobar I*. The most recent filing by Plaintiff in that case was on November 5, 1996, almost five years after Plaintiff agreed to dismissal of the case with prejudice. *Aff. of Jose Escobar* [#33] in *Escobar I*.

*Escobar II*, was filed by Plaintiff on September 12, 1991, and was his first *pro se* pleading in this Court. *See Docket of Escobar II*. There, the District Court dismissed his § 1983 complaint against a guard at the Arkansas Valley Correctional Facility ("AVCF"), where he was then incarcerated. *See Escobar v. Parker*, 982 F.2d 528, 1992 WL 372400, at *1 (1992) (table case). In his complaint in that case, Plaintiff alleged that the guard's conduct violated his Eighth Amendment right to be free from cruel and unusual punishment and his due process rights pursuant to the Fourteenth Amendment. *Id.* at *1-2. The District Court required Plaintiff to show cause why his complaint should not be dismissed for failure to state a claim, and when Plaintiff failed to respond to the Court's show cause order, the Court dismissed the complaint. *Id.* at *1. The dismissal was affirmed by the Tenth Circuit Court of Appeals, which agreed that Plaintiff had failed to allege any constitutional violation.

Plaintiff's next lawsuit, filed on September 17, 1993, included fourteen defendants. *Compl.* [#3] in *Escobar III*. His claims pursuant to 42 U.S.C. § 1983 based upon alleged violation of his civil rights to due process of law and equal protection of the law were quickly dismissed, though his claims based upon alleged violation of the 8th Amendment were initially reevaluated. *Order* [#11] in *Escobar III*. Regardless, after numerous requests by Plaintiff to postpone various deadlines [##42, 45, 46, 91, 104, 126], the Court granted summary judgment to all defendants. *See Recommendation* [#125] in *Escobar III*; *Order* [#129] in *Escobar III*. The case was closed on May 5, 1997.

Plaintiff attempted very similar claims in *Escobar IV*, which he filed on January 18, 1996. *Compl.* [#3] in *Escobar IV*. Plaintiff alleged violations of his Eighth Amendment, due process, and equal protection rights, retaliation, and intentional infliction of emotional distress. *See Escobar v. Zavaras*, 149 F.3d 1190, 1998 WL 314303, at *1 (1998) (table case). Initially, the assigned magistrate judge recommended that the defendants' motion for summary judgment be denied as to the Eighth Amendment, retaliation, and emotional distress claims, but after reviewing the magistrate judge's recommendation de novo, the district judge disagreed with the recommendation and granted summary judgment in favor of defendants on all claims. *Id.*; *see Magistrate's Recommendation* [#67] in *Escobar IV* (D. Colo. June 19, 1997). The summary judgment was appealed, the case was remanded, and the case was eventually settled and dismissed with prejudice. *Order by Chief Judge Richard P. Matsch* [#165] in *Escobar IV* (D. Colo. Jan 3, 2000).

Plaintiff has filed two additional lawsuits that only require a brief mention: *Escobar V* was filed August 13, 1999, and was a Petition for Writ of Habeas Corpus. *See Petition for Writ of Habeas Corpus* [#2] in *Escobar V*. The application was denied on September

21, 1999. *Order* [#13] in *Escobar V*. Defendants also briefly cited to *Escobar VIII*, wherein Plaintiff filed a Notice of Intent "proclaiming his intent to take legal action against two members of the Court, former Judge Nottingham and Magistrate Judge Mix." *Motion* [#110] at 3 (citing *Def. Ex. A-10* [#110-10]). This case was dismissed on October 29, 2008, for failure to cure deficiencies, as Plaintiff never filed a Prisoner Complaint, never filed a Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915, and never paid the filing fee. *Order of Dismissal* [#3] in *Escobar VIII*.

## II. Standard of Review

### A.    Frivolous and Malicious Pursuant to 28 U.S.C. § 1915

The Court need only provide a brief basis for a recommendation to dismiss Plaintiff's action as frivolous and malicious pursuant to 28 U.S.C. § 1915(e)(2)(B)(I).  *See Boag v. MacDougall*, 454 U.S. 364, 365 n.1 (1982).  According to 28 U.S.C. § 1915, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious."  28 U.S.C. § 1915(e)(2)(B)(I).  An IFP action is "frivolous," so that dismissal is required pursuant to the IFP statute, when either: (1) the factual contentions are clearly baseless, or (2) the claim is based on an indisputably meritless legal theory. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  The analysis for dismissal with prejudice as a Rule 41(b) sanction is also applicable to finding malicious conduct pursuant to § 1915(e)(2)(B)(I).  *See generally Hawkinson v. Montoya*, 283 F. App'x 659, 662-67 (10th Cir. July 7, 2008) (upholding dismissal of case pursuant to both § 1915 and Rule 41(b) based on the same conduct); *Kettering v. Chaves*, No. 07-cv-01575-CMA-KLM, 2008 WL 4877005, at **1, 21 n.4 (D. Colo. Nov. 12, 2008) (dismissing plaintiff's case pursuant to § 1915 and Rule 41(b) due to "Plaintiff's pattern of unacceptable and abusive behavior");

*Taylor v. Chicago Police Dep't*, No. 07-cv-5097, 2008 WL 2477694, at *4 (N.D. Ill. June 18, 2008) (dismissing plaintiff's case pursuant to § 1915 and Rule 41(b) regarding similar conduct).

## B.    Dismissal as a Sanction

"[A] court has authority to impose the sanction of dismissal for failing to follow procedural rules . . . and for failing to obey court orders." *Lynn v. Roberts*, No. 01-3422, 2006 WL 2850273, at *6 (D. Kan. Oct.4, 2006).  As stated by the Tenth Circuit,

> Before choosing dismissal as a just sanction, a court should ordinarily consider a number of factors, including: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. Only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits is dismissal an appropriate sanction.

*Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992) (internal quotations and citations omitted) (affirming dismissal with prejudice where the plaintiff "knew of the potential consequences of his actions").  "[I]n cases in which a party appears *pro se*, the court should carefully assess whether it might appropriately impose some sanction other than dismissal, so that the party does not unknowingly lose its right of access to the court because of a technical violation." *Id.* at n.3.  However, a plaintiff's *pro se* status does not excuse his abuses.  *See Garrett v. Selby Connor Maddux & Janner*, 425 F.3d 836, 841 (10th Cir. 2005) (citing *Theriault v. Silber*, 579 F.2d 302 (5th Cir. 1978)); *see also Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986) (holding that *pro se* litigants have "no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets").

**C.      *Pro Se* Status & Prison Litigation**

When considering Plaintiff's filings, the Court is mindful that it must construe the filings of a *pro se* litigant liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be a *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [a *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, Plaintiff, as a *pro se* litigant, must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

In addition, the Court "must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003). To this end, the Court notes the well-established law that prison management functions should be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. *See, e.g., Meachum v. Fano*, 427 U.S. 215 (1976). Accordingly, courts should interfere with the management of prisons only under exceptional and compelling circumstances. *Taylor v. Freeman*, 34 F.3d at 266, 268-70 (4th Cir. 1994). Indeed, the Tenth Circuit has stated that it "abhor[s] any situation or circumstance requiring the intervention of the federal courts in matters involving the administration, control and maintenance by the sovereign states of their penal systems. It is a delicate role assigned to the federal courts to display that restraint so necessary 'in the maintenance of proper federal-state relations.'" *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977) (citation

omitted).  As such, "sweeping intervention in the management of state prisons is rarely appropriate when exercising the equitable powers of the federal courts."  *Taylor*, 34 F.3d at 269 (citations omitted).

### III. Analysis

**A.      Frivolous or Malicious Pursuant to 28 § 1915(e)(2)(B)(I)**

According to 28 U.S.C. § 1915, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious."  28 U.S.C. § 1915(e)(2)(B)(I).  An IFP action is "frivolous," so that dismissal is required pursuant to the statute, when either: (1) the factual contentions are clearly baseless, or (2) the claim is based on an indisputably meritless legal theory.  *Neitzke*, 490 U.S. at 325; *see Fogle v. Pierson*, 435 F.3d 1252 (10th Cir. 2006); *Pullen v. Keesling*, 9 F. App'x 882 (10th Cir. 2001).  Pursuant to § 1915, the Court has "the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless."  *Neitzke*, 490 U.S. at 327.  "Clearly baseless factual allegations are those that are 'fantastic' or 'delusional.'"  *Id.*  Thus, "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible."  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992); *Hall*, 935 F.2d at 1109.

"[W]henever a plaintiff states an *arguable* claim for relief, dismissal for frivolousness under § 1915(d)[5] is improper, even if the legal basis underlying the claim ultimately proves incorrect."  *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991) (emphasis in original) (citing *Neitzke*, 490 U.S. at 328).  Though there is case law suggesting that litigation may be dismissed with prejudice as legally frivolous or malicious pursuant to 28

---

[5]  28 U.S.C. § 1915(d) became §1915(e)(2)(B)(I) in 1996.

U.S.C. § 1915(e)(2)(B)(I) simply for raising causes of action identical to past claims, *see Cooper v. Leiba*, No. 10-cv-1514-ZLW, 2010 WL 3341209, at *1 (D. Colo. Aug. 24, 2010), simple repetition of claims does not make allegations "delusional" or without legal merit. If a *pro se* complaint can be read "to state a valid claim on which the plaintiff could prevail, [the Court] should do so despite [P]laintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110.

Defendants assert no other basis for the alleged frivolousness of Plaintiff's litigation except for its repetition of past claims and its "kitchen-sink" style. *Motion* [#110] at 2-4; *see* 42 Am. Jur. 2d, Injunctions § 181, at 772 (2010) ("Although litigiousness alone will not support an injunction restricting a plaintiff's filing activities, the courts have the authority to enjoin persons engaged in the manifest abuse of the judicial process."). Though repetition of meritless claims may suggest abuse of the judicial process, the Court declines to find that they are, for the reason of repetition alone, frivolous.

Even if the claims are not frivolous, some courts have held that "a court may properly dismiss a suit as malicious where a plaintiff has already engaged in a multitude of identical or closely similar suits and the issues have already been determined." 32 Am. Jur. 2d, Fed. Courts § 443; *see Griffin v. Zavaras*, 336 F. App'x 846, 848 (10th Cir. 2009) ("The district court found that Mr. Griffin's complaint was frivolous and malicious because he was attempting *to re-litigate matters that already had been decided.*"); *Stine v. Lappin*, No. 07-cv-01839-WYD-KLM, 2009 WL 2848849-WYD-KLM, at *48 (D. Colo. June 25, 2009) (imposing sanctions in light of the plaintiff's extensive history of filing frivolous and malicious pleadings *despite numerous court warnings and admonishments*); *accord Pittman*

*v. Moore*, 980 F.2d 994, 995 (5th Cir. 1993) ("[I]t is 'malicious' for a pauper to file a lawsuit that duplicates allegations of another pending federal lawsuit by the same plaintiff."); *Crisafi v. Holland*, 655 F.2d 1305, 1309 (D.C. Cir. 1981) ("A complaint that merely repeats pending or previously litigated claims *may* be considered abusive . . . ."). While it is true that claims in this case mirror those alleged in many of Plaintiffs past claims, this case is distinguishable. The facts Plaintiff alleges are not so specific or extraordinary that they preclude the possibility of repetition by new defendants, so this case does not necessarily "re-litigate matters that already had been decided." *Griffin*, 336 F. App'x at 848. Additionally, unlike past cases in which the Court has dismissed malicious or frivolous pleadings with prejudice, there have been no evidentiary hearings, depositions, or other opportunities for Plaintiff to present hard evidence supporting his claims, and Plaintiff's previous inability to present evidence supporting his claim does not preclude his ability to do so here. *See, e.g.*, *Stine*, 2009 WL 2848849, at *2 (D. Colo. Sept. 1, 2009).

Defendants briefly cite to Plaintiff's history of personal attacks on the ethics of judicial officers of this Court. *See Motion* [#110] at 14. The Court notes that while these attacks are unwarranted, they have no bearing on the legal or factual merits of Plaintiff's claims against Defendants.

The Court finds that the circumstances here do not call for dismissal of this case pursuant to 28 U.S.C. § 1915(e)(2)(B)(I). Plaintiff's allegations may be duplicative or exaggerated, and discovery may even prove them completely false, but the notion that a prisoner may be subjected to conditions of this nature is not, on its face, an "inconceivable fantasy." *Cf. Gale v. Williams*, 154 F. App'x 494, 495 (7th Cir. 2005).

**B.      Dismissal as a Sanction**

Even if the Court were to find that Plaintiff's Complaint was malicious or frivolous pursuant to § 1915, the Court's "discretion to choose a sanction is limited in that the chosen sanction must be both 'just' and 'related to the particular claim . . . at issue . . . .'" *Ehrenhaus*, 965 F.2d at 920.   Outright dismissal of a lawsuit is a particularly severe sanction. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980).   Accordingly, before imposing dismissal as a sanction, the court must evaluate appropriate factors and determine whether the proper sanction in this case is dismissal or the imposition of filing restrictions.  *Id.*

In *Ehrenhaus*, the Tenth Circuit enumerated the factors to be considered when evaluating grounds for dismissal of an action.  The factors are:  "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Id.* at 921 (internal quotations and citations omitted); *see also Gates Rubber Co. v. Bando Chems. Indus.,* 167 F.R.D. 90, 101 (D. Colo. 1996).  This list is not exhaustive, nor are the factors necessarily evenly weighed.  *See Archibeque v. Atchison*, 70 F.3d 1172, 1174 (10th Cir. 1995).  "[D]ismissal is warranted when 'the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.'" *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1144 (10th Cir. 2007) (quoting *Ehrenhaus*, 965 F.2d at 921).  Given that Plaintiff is proceeding *pro se*, the Court must carefully conduct its analysis and consider whether "some sanction other than dismissal with prejudice [is appropriate], so that the party does not unknowingly lose [his]

right of access to the courts . . . ."  *Nasious v. Two Unknown BICE Agents*, 492 F.3d 1158,

1163 (10th Cir. 2007) (quoting *Ehrenhaus*, 965 F.2d at 920 n.3).

Regarding the first factor, the Court "has long recognized that defendants are

prejudiced by having to respond to pleadings as wordy and unwieldy as [Plaintiff's]"

pleadings have been.  *Nasious*, 492 F.3d at 1162; *see, e.g.*, *Mann v. Boatwright*, 477 F.3d

1140, 1148 (10th Cir. 2007); *Knox v. First Sec. Bank of Utah*, 196 F.2d 112, 117 (10th Cir.

1952).  With regards to the second factor, the Court finds that Plaintiff's conduct in this case

has interfered with the judicial process.  Just as Defendants are burdened by Plaintiff's

abuses, so too is the Court.  The issue here "is respect for the judicial process and the law."

*See Cosby v. Meadors*, 351 F.3d 1324, 1326-27 (10th Cir. 2003).   Plaintiff's

unconscionable and slanderous accusations and his continued filing of meritless, repetitive,

and unwieldy pleadings evidences a lack of respect for the Court, Defendants, and the

judicial process.  Moreover, the Court's continual review of Plaintiff's file, the issuance of

Orders prompted by Plaintiff's unnecessary, noncompliant, or incredible filings increases

the workload of the Court and interferes with the administration of justice.   "This

[Recommendation] is a perfect example, demonstrating the substantial time and expense

required to perform the legal research, analysis, and writing to craft this document."  *See*

*Lynn v. Roberts*, No. 01-cv-3422-MLB, 2006 WL 2850273, at *7 (D. Kan. Oct. 4, 2006).

Addressing the third and fourth factors together, the Court notes that though Plaintiff

has repeatedly alleged slanderous and unfounded claims regarding the Court and

Defendants, the Court can isolate no specific Order from this Court which Plaintiff has

disobeyed by filing either his Complaint or his various requests for injunctive relief.

Additionally, though Plaintiff had been repeatedly warned about filing slanderous or abusive

pleadings, in this case and others, he has not been explicitly warned of the risk of dismissal. *Minute Order* [#113] at 6 ("[A]ny future filings that contain disrespectful, baseless, and outlandish allegations against the judiciary *will result in such pleadings being stricken from the record.*") (emphasis added). Plaintiff has also been informed that the Court "may dismiss this action . . . if [P]laintiff fails to stay current with his payment obligations in the prior action or actions," but Plaintiff has not failed to meet this obligation. *Order granting Motion for Leave to Proceed in Forma Pauperis* [#4] at 3. Although Plaintiff received warnings of conditions that may lead to dismissal in the *Incarcerated Pro Se Litigant Letter* [#64-1], these warnings do not encompass the conditions at hand. Thus, though Plaintiff has been warned that his offensive filings may be stricken, the Court's review of Plaintiff's many lawsuits has been unable to locate an Order or Letter from the Court that warned Plaintiff that he risked *dismissal* for this conduct. *See Dutro v. CCA Crowley Cnty. Corr. Facility*, No. 09-cv-00642-WYD-KLM, 2011 WL 864280, at *3 (D. Colo. Feb. 7, 2011) ("Plaintiff was warned by the Court that he risked dismissal of his case if he failed to move it forward . . . . Accordingly, it should be no surprise to Plaintiff that his failure to prosecute his case could result in the sanction of dismissal."); *Stine v. Fetterhoff*, No. 07-cv-02203-WYD-KLM, 2009 WL 2848848, at *4 (D. Colo. Aug. 31, 2009) ("Plaintiff was given repeated warnings that dismissal of his action was a likely sanction for his litigation abuses."); *Cooper*, 2010 WL 3359665, at *3 ("Plaintiff has received several warnings that his conduct could result in dismissal of his lawsuit, without any further warning"); *Cowan v. Rocky Mountain Steel Mills*, No. 07-cv-02702-WYD-KLM, 2008 WL 2998164, at *3 (D. Colo. Aug. 1, 2008) (finding, where "[p]laintiff was advised that dismissal could be a sanction the Court would choose to impose . . . [that plaintiff] had adequate warning that

his refusal to follow Court Orders would result in sanctions"); *Smith v. Argent Mortg. Co., LLC*, No. 05-cv-02364-REB-BNB, 2007 WL 2801452, at *4 (D. Colo. Sept. 21, 2007) (finding that an order warning *pro se* plaintiffs that "an evasive deposition answer is treated as a failure to answer . . . did not warn the plaintiffs that their behavior could result in dismissal of this case"). Considering Plaintiff's *pro se* status, this history of litigation does not make it clear that Plaintiff knew, or reasonably should have known without an explicit warning, that his litigation abuses would ultimately result in dismissal, and dismissal is thus an inappropriate sanction in this case. *See Nasious*, 492 F.3d at 1163 (finding that the third and fourth *Erenhaus* factors were not met when the district court had failed to provide "some modest additional explanation" of the rule a *pro se* plaintiff violated).

This being said, **Plaintiff is hereby unequivocally warned that, should his pattern of groundless and vexatious litigation continue, his malicious abuse of the judicial process will justify dismissal with prejudice of any malicious and/or frivolous lawsuit**.

## C.    Filing Restrictions

"The right of access to the courts is neither absolute nor unconditional." *Schlicher v. Thomas*, 111 F.3d 777, 781 (10th Cir. 1997) (internal quotations omitted). Thus, the Court has discretionary authority to "enjoin litigants who abuse the court system" pursuant to 28 U.S.C. § 1651(a). *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989). Indeed, "[t]here is strong precedent establishing the inherent power of federal courts to regulate the activities of abusive litigants by imposing *carefully tailored restrictions* . . . ." *Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986) (emphasis added); *see Jones v. Thompson*, 996 F.2d 261, 264 (10th Cir. 1993) (noting the Court's "inherent power to levy sanctions in

response to abusive litigation practices"); *Adkins v. Kan. Com'n on Judicial Qualifications*, Nos. 11-3353, 12-3111, 12-3112, 12-3262, 12-3334, 2013 WL 470362, at *7 (10th Cir. Feb. 8, 2013) (detailing approved filing restrictions enjoining Plaintiff from filing *pro se* actions without permission to proceed). 28 U.S.C. § 1651(a) provides federal courts the discretion to regulate the activities of abusive litigants, not as a sanction, but in a manner "necessary or appropriate [to] aid [the Court's] jurisdiction." *See In re Winslow*, 17 F.3d 314, 315 (10th Cir. 1994). To this end, "'[e]ven onerous conditions' may be imposed upon a litigant as long as they are designed to assist the district court in curbing the particular abusive behavior involved." *Id.* (quoting *Carter v. United States*, 733 F.2d 735, 737 (10th Cir. 1984)). This is true even with regards to *pro se* plaintiffs. *See Cosby*, 351 F.3d at 1331-32 (affirmed the dismissal of the plaintiff's claims with prejudice because he did not comply with the court orders outlining his filing fee payment obligations).

District courts have broad power to manage their dockets, and their exercise of that power is reviewed only for abuse of discretion. *See, e.g.*, *Link v. Wabash R.R.*, 370 U.S. 626, 630-31 (1962). Whether or not Plaintiff's actions are frivolous or malicious under § 1915, the Court is convinced that to continue to let Plaintiff file his redundant, verbose, resource-consuming, and often groundless accusations unchecked by a reasonable restriction would allow Plaintiff to "consume[ ] more than his fair share of the federal judiciary's limited resources.*" In re Peterson*, 338 F. App'x 763, 764, 2009 WL 2197345 (10th Cir. 2009).

> Injunctions restricting further filing are appropriate where (1) "the litigant's lengthy and abusive history" is set forth; (2) the court provides guidelines as to what the litigant "must do to obtain permission to file an action"; and (3) the litigant received "notice and an opportunity to oppose the court's order before it is instituted."

*Ysais v. Richardson*, 603 F.3d 1175, 1180 (10th Cir. 2010) (quoting *Tripati*, 878 F.2d at 353–54).  Plaintiff has been granted the privilege of proceeding IFP in many cases, and he has abused that privilege.  Even construing his filings liberally, as required for *pro se* litigants, *see Haines*, 404 U.S. at 520-21, "when a litigant abuses these privileges, filing restrictions are appropriate."  *Werner v. Utah*, 32 F.3d 1446, 1447 (10th Cir. 1994).  In light of Plaintiff's lengthy and abusive filing history, summarized above, it is clear that restrictions are necessary to curb the high risk of frivolous *pro se* filings.

The Court has detailed Plaintiff's history of abusive filings throughout the Recommendation.  Due to the gravity of the allegations and assuming their truth as the Court must at this stage, the Court has declined to go so far as to assume Plaintiffs allegations are frivolous.  Additionally, the Court does not find the claims to be subjectively malicious.  However, a review of Plaintiff's litigation history suggests that his pattern of litigation, though not necessarily subjectively malicious, is an objectively abusive and vexatious strain on limited judicial resources.  *See Ketchum v. Cruz*, 961 F.2d 916, 921 (10th Cir. 1992) (approving district court's order imposing filing restrictions, which noted "subjective good faith . . . is not a factor").  Therefore, the Court respectfully recommends that, to prevent unduly duplicative litigation in the future, Plaintiff be enjoined from proceeding in this Court without the representation of a licensed attorney admitted to practice in this court, unless he first obtains permission to proceed *pro se. See, e.g.*, *Ysais*, 603 F.3d at 1181; *Kinnell v. Graves*, 265 F.3d 1125, 1129 (10th Cir. 2001); *Judd v. Univ. of N.M.*, 204 F.3d 1041, 1044 (10th Cir. 2000); *see also Adkins*, 2013 WL 470362, at *7.

"Where a litigant's court access is restricted, guidelines must be set forth so that the litigant is aware of what must be done in order to obtain the court's permission to file an

action." *Cromar v. Railey*, 43 F.3d 1482 (table) (10th Cir. 1994) (unpublished decision).

Therefore, the restrictions proposed by this Court, in the form of an injunction, are set forth

below:

Any documents Plaintiff wishes to submit for filing in this District shall be delivered to the Office of the Clerk, United States District Court, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado 80294.   As a prerequisite to filing a *pro se* complaint, **including complaints where Plaintiff is proceeding as a co-plaintiff**, Plaintiff must file **THREE** documents:

**(1) A petition titled, "Petition Pursuant to Court Order Seeking Leave to File a *Pro Se* Action," as directed below.   Plaintiff shall affix a copy of the injunction to the petition.**

The petition must contain the following information:

(a) a statement advising the Court whether any defendant to the lawsuit was a party to, or was any way involved in, any prior lawsuit involving Plaintiff; **if so, Plaintiff must identify (1) what lawsuits each defendant was involved in and (2) what claims, if any, Plaintiff has previously alleged against the defendant**;

(b) a list of all lawsuits in the United States District Court for the District of Colorado, the United States Court of Appeal for the Tenth Circuit, the United States Supreme Court, as well as any other federal or state court in which Plaintiff was or is a party; the name and citation of each case, if applicable, including jurisdiction; his involvement in each lawsuit; the status of each lawsuit; and the disposition;

(c) a list of all federal or state cases in which a judgment was rendered against Plaintiff, if any; the name and citation of each case; the amount of judgment rendered against him, if any; the amount of the judgment that remains outstanding; and the reasons why the judgment remains outstanding; and

(d) a list of all federal or state cases in which a judgment was rendered in favor of Plaintiff, if any; the name and citation of each case; the amount of judgment rendered in favor of him, if any; the amount of the judgment that remains outstanding; and the reasons why the judgment remains outstanding.

**(2) An affidavit as directed below:**

The affidavit shall be signed under the penalty of perjury, and shall contain the following recitals:

(a) that the complaint or claims Plaintiff wishes to present never before have been raised by him and disposed of by any federal or state court;

(b) that to the best of his knowledge the claim or claims are not frivolous or taken in bad faith; that the claim or claims are well grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; that the lawsuit is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *See* Fed. R. Civ. P. 11; and

(c) that the claim or claims are not meant to harass any individual or entity.

**(3) A copy of the complaint or claims sought to be filed in this District on the Court's prisoner complaint form.**

The complaint or claims sought to be filed in this district must comply with the injunction, Fed. R. Civ. P. 8, all other provisions contained in the Federal Rules of Civil Procedure, and the United States District Court for the District of Colorado Local Rules of Practice (the "Local Rules of Practice").

***WHILE PLAINTIFF AWAITS APPROVAL OF HIS PETITION, HE SHALL NOT FILE ANY MOTIONS OR OTHER PLEADINGS PERTAINING TO THE PETITION UNLESS DIRECTED TO DO SO.***

***PLAINTIFF IS NOT PERMITTED TO HAVE MORE THAN ONE PETITION PENDING AT A TIME.  IN NO EVENT SHALL PLAINTIFF SUBMIT MORE THAN SIX PETITIONS PER YEAR.***

**The procedure for review of Plaintiff's intended filings should be as follows:**

Whenever Plaintiff submits a petition for leave to file a *pro se* action, the Clerk of the Court, or designated deputies, will accept the documents, mark them received, and immediately forward them to the preliminary review unit.

The preliminary review unit (*pro se* division), shall decide whether to approve or disprove the petition by considering the following:

(1) whether Plaintiff has complied with the injunction in all particulars;

(2) whether Plaintiff's complaint complies with the Federal Rules of Civil Procedure and Local Rules of Practice;

(3) whether the complaint is frivolous, abusive, harassing, or malicious;

(4) whether the claims raised in Plaintiff's complaint have been raised by him and disposed of by any federal or state court;

(5) whether there has been full compliance with Fed. R. Civ. P. 11, and all

pleadings and filings do not violate 28 U.S.C. § 1927;

(6) whether the complaint alleges claims against individuals or entities that may have immunity from suit;

(7) such other reasonable requirements established by the reviewing judge; and

(8) the reviewing judge shall not otherwise address the merits of the complaint.

**Plaintiff's failure to comply with the procedures and principles mandated by the injunction shall be sufficient grounds for denying the petition.**

As noted in item (5), disapproval of the petition may be founded upon false recitals in any of Plaintiff's filings.  If any false statement is made, Plaintiff may be considered in violation of the injunction and subject to other orders of the reviewing judge, including appropriate sanctions.  The provisions contained in Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 are incorporated into this injunction.

If the reviewing judge enters an order granting the petition, the Clerk of the Court shall cause the complaint and materials to be filed as of the date of the order. The assignment of the case shall be pursuant to the Local Rules of Practice.

The injunction shall not interfere in any way with actions, orders, or judgments of any federal court involving Plaintiff which predate the injunction.

(*See, e.g.*, *Ketchum*, 775 F. Supp. at 1406-08, *aff'd*, 961 F.2d 916 (10th Cir. 1992)).

Because the Court is imposing these restrictions *sua sponte*, Plaintiff shall have fourteen days from the date of this order to file written objections, limited to fifteen pages, to these proposed sanctions.  *See Kinnell*, 265 F.3d at 1130.  Unless the Court orders otherwise upon review of any timely filed objections, the restrictions shall take effect twenty days from the date of the District Judge's decision to adopt, and shall apply to any matter filed by Plaintiff with this Court after that time.  *See id.*

## IV.  Conclusion

The Court respectfully **RECOMMENDS** that Defendants' Motion to Dismiss [#110]

be **DENIED**.

The Court further respectfully **RECOMMENDS** that the District Court, in order to reasonably restrict Plaintiff's ability to file malicious or frivolous pleadings, enjoin Plaintiff from filing future *pro se* claims without first seeking prior leave of court, as detailed above.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  June 24, 2013

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge